```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


 FERNANDO LORENZO              *     4:19-MC-0802
                               *     Houston, Texas
 VS.                           *
                               *     2:32 p.m.
 CMPC CELULOSE                 *     June 28, 2019
 RIOGRANDENSE, LTDA.


                         MOTION HEARING


         BEFORE THE HONORABLE KEITH P. ELLISON
                UNITED STATES DISTRICT JUDGE
```

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Thomas Hal Cook, Jr.
ZELLE, LLP
901 Main Street, Suite 4000
Dallas, Texas 75202
214.742.3000


**FOR THE DEFENDANT:**
Nicole Duclos
COVINGTON & BURLING, LLP
620 Eighth Ave
New York, New York 10018
212.841.1135


Lara Denise Pringle
Jones Walker LLP
811 Main Street, Suite 2900
Houston, Texas 77002
713.437.1831

```
 1  Court Reporter:
    Johnny C. Sanchez, RPR, RMR, CRR
 2  515 Rusk, #8004
    Houston, Texas 77002
 3  713.250.5581

 4  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-assisted transcription.
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  THE COURT: Okay. Good afternoon and
2 welcome.
3  We're here on In Re: CMPC Celulose. And
4 we'll take appearances of counsel, beginning with
5 applicant, petitioner.
6  MS. DUCLOS: Good afternoon, Your Honor.
7 Nicole Duclos from Covington and Burling, on behalf of
8 CMPC.
9  THE COURT: Nicole Duclos?
10  MS. DUCLOS: Yes.
11  MS. PRINGLE: And I'm Laura Pringle, also on
12 behalf of CMPC.
13  THE COURT: Welcome to both of you.
14  MS. PRINGLE: Thank you.
15  THE COURT: On the phone?
16  MR. COOK: Yes. Good afternoon, Judge. Tom
17 Cook for the Zelle firm in Dallas, on behalf of
18 Mr. Fernando Lorenzo.
19  THE COURT: And welcome to you, too.
20  MR. COOK: Thank you.
21  THE COURT: I have CMPC's request, and you
22 can assume I've read the papers.
23  Anybody want to add to what's in their
24 request? I'll let you go first, Ms. Duclos, if you wish.
25 Anything you want to add.

```
 1                  MS. DUCLOS:  On the administration
 2   submission?
 3                  THE COURT:  The application motion, what
 4   brings us here today, anything you'd like to add?
 5                  MS. DUCLOS:  No.  I mean, the last
 6   submission was a response to our motion to strike, and
 7   then for alternative a motion to respond to the second
 8   supplement.
 9                       We understand that our motion to file the
10   response, the second supplement was granted.  So it's in
11   the record.
12                       And, therefore, we understand that the
13   second supplement remains in the file.
14                  THE COURT:  Okay.  Mr. Cook, anything you'd
15   like to say?
16                  MR. COOK:  Just a couple of things, Your
17   Honor, if I may?
18                       Obviously, they've moved to strike our
19   supplemental response.  Since we did not oppose their
20   motion for leave to file a second response to ours and
21   they've filed it, we don't believe there is any prejudice.
22                       And so we think, obviously, that's their
23   motion to strike our response should be denied.
24                  THE COURT:  It is.  It's denied.
25                  MR. COOK:  Okay.  Thank you.
```

1                  And just a couple of other comments.  I'll
2    make my comments very brief.
3                  I think this matter now is even a little
4    bit simpler than it was before.  And let me elaborate, if
5    I could.
6                  They've only sought, CMPC has only sought
7    two things from Mr. Lorenzo.  They sought documents that
8    were not otherwise in the possession of his employer, ESI,
9    in his deposition.  That's it.
10                 I believe the first of these items has
11   been rendered moot.  And the reason I say that is because
12   CMPC brought a separate action in Illinois to seek those
13   documents; they were successful in obtaining those
14   documents; those documents have been produced subject to
15   privilege and whatnot.  But that issue is now being
16   handled in Illinois, by an Illinois court, and those
17   documents have been produced.
18                 So I think the only thing that's left for
19   this Court to determine is whether they get to go forward
20   with the deposition of Mr. Lorenzo.
21                 And I would just note in that respect, a
22   couple of things, you know, obviously for the reasons that
23   we cite in our papers, we don't believe that it's
24   appropriate in terms of meeting the various factors.
25                 I'll just make a couple of points.  Unlike

1 the Louisiana court that decided a couple of these issues
2 and whatnot, the specific issue of a deposition has not
3 presented either in Louisiana or in Illinois. And there's
4 a significant distinction here in that they have a
5 process, CPSMC has a process that they can use through
6 letter rogatory to try to obtain the deposition of
7 Mr. Lorenzo. They've just chosen not to do that.
8     They sort of give a very brief treatment
9 in their response that don't disagree that it is available
10 to them, they just say it's burdensome.
11     THE COURT: Why are letters of rogatory
12 better for you than this procedure?
13     MR. COOK: Well, Your Honor, it comes down
14 to this. We think, and for the reasons that our expert
15 says in his declaration that they're not entitled to
16 discovery under -- this discovery under Brazilian law.
17     They filed an affidavit with an expert who
18 said something different. So we've got a conflict here,
19 and rather than asking you to make a decision about who's
20 right with respect to Brazilian law, it seems to me that
21 it makes more sense to have that decided in Brazil by the
22 Brazilian courts and pursuant to the mechanisms
23 established under Brazilian law.
24     So that's my fundamental point. I think
25 one of the things that the Louisiana court got hung up on

1  is:  Hey, I got these conflicting affidavits, so I don't
2  really know what to do here.  So I'm going to just grant
3  the motion and let the Brazil court sort it out
4  afterwards.
5              Well, that's going to harm my client if
6  he's got to appear for a deposition, give testimony, and
7  then Brazilian courts sort it out.  I think it makes more
8  sense, Your Honor, for the Court to sort that out and for
9  them to go through the process to establish in the
10  jurisdiction that they chose for this lawsuit.
11              THE COURT:  Other than process, other than
12  reasons of process, do you think letters rogatory are
13  preferable, how is your client at all jeopardized or
14  injured by this approach?
15              MR. COOK:  How is the client jeopardized by
16  the Section 1782 approach?
17              THE COURT:  Yes.  Or injured.  How is he
18  hurt in any way?
19              MR. COOK:  Well, again, I think, Judge, if
20  they cannot obtain his deposition through the procedures
21  in Brazil, and if a Brazilian court were to determine in
22  fact it is not appropriate to take his deposition for some
23  of the reasons that we said that we think it's
24  inconsistent with the Article 12 or Section 5, Article 12
25  of the Brazilian Constitution, then his deposition never

```
 1  takes place.
 2               So the harm is he has to give a
 3  deposition, and then they're proceedings in Brazil to sort
 4  all of that out.
 5               There's aspect to this, too, which is we
 6  believe all along that this proceeding, this and the lower
 7  proceeding is a stalking horse to get discovery for the
 8  arbitration that they can't otherwise get under Fifth
 9  Circuit precedent before a arbitration tribunal.
10               So we suggested, well, if you do get this,
11  then you should limit it to the ad valorem proceeding and
12  not allow it to be used in the arbitration.  They've
13  opposed that, which to me tells me it's very clear what
14  they're trying to do, which is circumvent the restrictions
15  of the Fifth Circuit and obtain discovery for use
16  improperly in the arbitration.
17               So in terms of harm, I think those are two
18  areas where I think my client's potentially harmed if we
19  go outside the process that's established here and is
20  available to them in Brazil.
21               THE COURT:  Of course, in American justice,
22  sitting for a deposition is hardly considered a major
23  burden.  I mean, the theory is the courts are entitled to
24  all men's evidence, and depositions are a every day event.
25  And I don't know, I think -- I do agree with you that I'm
```

1 not in a good position to determine Brazilian law, but
2 what I can say is that there have been a number of other
3 cases in the United States where 1782 applications for
4 depositions were granted for cases pending in Brazil. And
5 that suggests to me that at least other courts have found
6 it necessary to authorize those kinds of depositions. And
7 I don't think -- I don't get the sense that CMPC is on a
8 fishing expedition here. Their request seems tailored,
9 but let me go back to CMPC rather than I try to make the
10 argument for you. What do you think?
11       MS. DUCLOS: I will try to address the
12 comments in sequence in which they were made.
13       First, I do not see that the request for
14 documents for Mr. Lorenzo is moot. It is indeed the case
15 that the court in Louisiana, the court in Illinois,
16 adopted actually the ruling in Louisiana after ESI,
17 Mr. Lorenzo's employer, failed to offer any evidence that
18 the Court in Brazil would reject the ones that led to
19 discovery.
20       And ESI did produce documents, but those
21 were with either custody, possession and control, and we
22 understand that Mr. Lorenzo has his own files with respect
23 to this very matter.
24       So we're also not seeking again the
25 documents that either side produced, but we are, however,

1  seeking the documents that are in Mr. Lorenzo's custody,
2  possession and control.  And, in addition, we are seeking
3  his deposition.
4              Second, the suggestion that we should use
5  the letter rogatory process is news to me.  It was not
6  raised in the papers that Mr. Lorenzo filed, nor was it
7  raised by Mr. Lorenzo's expert who did not dispute that in
8  light of the absence of the treaty, that mechanism is
9  extremely slow and impractical.  That was not raised or
10 disputed at any point in the many declarations that
11 Mr. Vida (phonetic) filed here.
12             And as far as what transpired in Illinois,
13 again, the Court requested evidence that the Court in
14 Brazil would reject this evidence which was not proffered,
15 and therefore no action took place.
16             Similarly, BSI, the other interviewing
17 firm that was retained by LOTA (phonetic) to conduct the
18 investigation associated with the adjustment process,
19 produced the documents and Mr. Clay, the engineer who is
20 employed by BSI, is scheduled to be deposed on
21 August 27th.
22             So these arguments, this is the first time
23 I hear that this should be done through letter rogatory,
24 and it was not supported by Mr. Lorenzo's expert in
25 Brazilian law.

1                In addition, the argument that Mr. Cooper
2    raises regarding Article 5 Brazilian constitution was not
3    raised with respect to depositions.  It was raised with
4    respect to the documentary evidence.  So this is also the
5    first time I here not from the expert on Brazilian law,
6    but from Mr. Cooper, that it applies to depositions.
7                And we have offered examples of cases
8    where discovery has been granted under Sections 172,
9    including depositions and the transcripts have been
10   appended to the proceedings in Brazil.  And at no point
11   was it argued that it was either unconstitutional or
12   illegal to do so, because it is not.
13               THE COURT:  Thank you.  Mr. Cook, do you
14   want another turn at bat?
15               MR. COOK:  Yes, if I may.  Thank you, Your
16   Honor.  Just briefly.
17               In terms of the document that Mr. Lorenzo
18   had -- I'm going to again address her arguments in order
19   as well.
20               I don't know where she gets her
21   understanding that Mr. Lorenzo has his own files, since
22   I'm the only who discussed this with Mr. Lorenzo, and he's
23   confirmed to me that he does not have his own files.  That
24   all of the information that he has is within the
25   possession, custody or control of Engineering Systems.

1                   So I do believe the document issue remains
2     moot.  But I suppose we --
3                   THE COURT:  Well as -- do we have a document
4     from your client where he subjects himself to penalty of
5     perjury saying that is true?  I mean, that's one thing,
6     you'd have to make a formal request, your client would
7     have to put himself in jeopardy of a contempt citation,
8     which is what you do if you deny you have any documents.
9                   MR. COOK:  Right.  Certainly, Your Honor, I
10    can produce that document --
11                       **(SIMULTANEOUS DIALOGUE)**
12                   THE COURT:  That would take an issue off the
13    table.  You could have provided it before this hearing,
14    too.
15                   MR. COOK:  Well, I understand, Judge.  I
16    guess, you know, this stuff has been moving fairly
17    rapidly, in terms of the various decisions, and I really
18    just wanted to illustrate to the Court that I think this
19    is a narrower issue with respect to depositions.  But I
20    certainly understand we will need to support that
21    Mr. Lorenzo has no additional documents.  And we will do
22    so.
23                   THE COURT:  Okay.  Please carry on.
24                   MR. COOK:  In terms of the letter rogatory
25    process, I don't think we have to raise them.  It's

1  discussed in their own briefs.  They raise it themselves,
2  they -- and it's discussed in Footnote 2 on Page 17 of
3  their initial application, their expert discusses it.  And
4  the only thing they say about it, really, is it's
5  cumbersome.  They don't say it's impossible.  They just
6  say it's cumbersome.
7           And, again, if we've got conflicting
8  issues of Brazilian law -- and, again, I think rather than
9  have this Court to make a decision about what's
10 appropriate, its more appropriate to have the Brazilian
11 courts deal with those.
12          The arguments regarding Article V, I would
13 say that, you know, the -- our expert's declaration is
14 very broad and very clear that he believes that any of
15 these kinds of communications which are not common to the
16 party, are subject to the constitutional protection that
17 are stated.
18          And so I think that that's clear, both
19 from his initial declaration and from the his supplemental
20 declaration.
21          And, finally, Judge, I'll try and move
22 through this quickly.
23          Just in terms of her examples of cases, I
24 would point out that most of the cases that they cite deal
25 with probate, you know, for example, probate issues, like

1  the Pimenta case, that it's an estate probate issue
2  involving concealed assets, they cite to the bankruptcy
3  case, they cite to a criminal case.  All cases that,
4  according to our expert, and as shown in his declaration,
5  deal with different issues, different provisions in the
6  Brazilian constitution that invoke these protections.
7              So I think they've cited, they, you know,
8  cherry picked the cases they want to cite and not cited
9  the ones that really address the issues presented here.
10             There is one case that they cite
11 interestingly, In Re:  Application for an order of
12 judicial assistance, 466 F.2nd 1020 out of the Northern
13 District of Illinois, and there the Court denied the
14 Section 1782 request for the depositions of two McDonald's
15 employees.  And the Court did so because the documents
16 that would be produced they said were self-authenticating,
17 there was no need to depose the witness, and petition did
18 not establish the necessity of the deposition and it was
19 receiving all the documents, including the information
20 sought.
21             So there are cases certainly going both
22 ways.  I think this one is more applicable than the estate
23 probate and criminal cases that have been cited.
24             And I would just submit, Judge, that that
25 is clearly a matter within your discretion, and I would

1  ask that you exercise the discretion to deny the relief
2  they've requested.
3         THE COURT:  Okay.  I'll go back to you,
4  Ms. Duclos.  Anything you'd lake to add?
5         MS. DUCLOS:  Yes.  Just to address these
6  points quickly.
7         As I think Mr. Cook agrees, the
8  declarations by Mr. Vida (phonetic), who is Mr. Lorenzo's
9  expert, do not address the issue of letter rogatory, or in
10 any way suggests that that is a better mechanism to seek
11 the discovery that's being sought here.  That was raised
12 in the very declaration that was appended to our
13 application.  It has not been disputed.
14         And same goes with the argument on
15 Article V, which does not touch upon depositions, which is
16 the issue that Mr. Cook submits is -- remains to be
17 decided here.
18         The conflicting issues of Brazilian law,
19 as Mr. Lorenzo puts it, there's no conflict with the
20 issues of Brazilian law.  There's no evidence that the
21 court in Brazil will not be receptive to this discovery,
22 and none has been offered here.
23         We commenced this proceeding in March,
24 it's almost July.  There's no such evidence, and that is
25 why it hasn't been produced.  It wasn't produced here, it

1  wasn't produced in Louisiana, it wasn't produced in
2  Illinois, in Ohio where Mr. Plain (phonetic) is going to
3  be deposed.
4              As far as the example that is being
5  offered, the scope of this deposition that CMPC is seeking
6  doesn't concern the authentication of documents.  It
7  concerns reportedly Mr. Lorenzo's role, the investigation
8  of an incident in Brazil, and his testimony is crucial for
9  the decision of that claim.
10             THE COURT:  Okay.  I'm going to go ahead and
11 authorize the discovery.  Do an order.  Both sides make
12 good points.  And I appreciate that there's a lot of space
13 between the without precedence, but I think there are
14 significant reasons for proceeding with discovery, and
15 less significant reasons not to.
16             Thank you very much.  Thank you.
17             MS. DUCLOS:  Thank you, Your Honor.
18             MR. COOK:  Thank you, Your Honor.
19             THE COURT:  You're excused.  Thank you.
20             **(Recessed at 2:51 p.m.)**
21
22
23
24
25

1 **COURT REPORTER'S CERTIFICATE**

2

3 I, Johnny C. Sanchez, certify that the foregoing is a
4 correct transcript from the record of proceedings in the
5 above-entitled matter.

6
                                /s/_____
7                               Johnny C. Sanchez, CRR, RMR

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**/s** [1] - 17:6
**1020** [1] - 14:12
**12** [2] - 7:24
**17** [1] - 13:2
**172** [1] - 11:8
**1782** [3] - 7:16, 9:3, 14:14
**2** [1] - 13:2
**27th** [1] - 10:21
**2:51** [1] - 16:20
**466** [1] - 14:12
**5** [2] - 7:24, 11:2
**above-entitled** [1] - 17:5
**absence** [1] - 10:8
**according** [1] - 14:4
**action** [2] - 5:12, 10:15
**ad** [1] - 8:11
**add** [4] - 3:23, 3:25, 4:4, 15:4
**addition** [2] - 10:2, 11:1
**additional** [1] - 12:21
**address** [5] - 9:11, 11:18, 14:9, 15:5, 15:9
**adjustment** [1] - 10:18
**administration** [1] - 4:1
**adopted** [1] - 9:16
**affidavit** [1] - 6:17
**affidavits** [1] - 7:1
**afternoon** [3] - 3:1, 3:6, 3:16
**afterwards** [1] - 7:4
**agree** [1] - 8:25
**agrees** [1] - 15:7
**ahead** [1] - 16:10
**allow** [1] - 8:12
**almost** [1] - 15:24
**alternative** [1] - 4:7
**American** [1] - 8:21
**appear** [1] - 7:6
**appearances** [1] - 3:4
**appended** [2] - 11:10, 15:12
**applicable** [1] - 14:22
**applicant** [1] - 3:5
**application** [4] - 4:3, 13:3, 14:11, 15:13
**applications** [1] - 9:3
**applies** [1] - 11:6
**appreciate** [1] - 16:12
**approach** [2] - 7:14, 7:16
**appropriate** [4] - 5:24, 7:22, 13:10
**arbitration** [4] - 8:8, 8:9, 8:12, 8:16
**areas** [1] - 8:18
**argued** [1] - 11:11
**argument** [3] - 9:10, 11:1, 15:14
**arguments** [3] - 10:22, 11:18, 13:12
**Article** [5] - 7:24, 11:2, 13:12, 15:15
**aspect** [1] - 8:5
**assets** [1] - 14:2
**assistance** [1] - 14:12
**associated** [1] - 10:18
**assume** [1] - 3:22
**August** [1] - 10:21
**authenticating** [1] - 14:16
**authentication** [1] - 16:6
**authorize** [2] - 9:6, 16:11

**available** [2] - 6:9, 8:20
**bankruptcy** [1] - 14:2
**bat** [1] - 11:14
**beginning** [1] - 3:4
**behalf** [3] - 3:7, 3:12, 3:17
**believes** [1] - 13:14
**better** [2] - 6:12, 15:10
**between** [1] - 16:13
**bit** [1] - 5:4
**Brazil** [11] - 6:21, 7:3, 7:21, 8:3, 8:20, 9:4, 9:18, 10:14, 11:10, 15:21, 16:8
**Brazilian** [16] - 6:16, 6:20, 6:22, 6:23, 7:7, 7:21, 7:25, 9:1, 10:25, 11:2, 11:5, 13:8, 13:10, 14:6, 15:18, 15:20
**brief** [2] - 5:2, 6:8
**briefly** [1] - 11:16
**briefs** [1] - 13:1
**brings** [1] - 4:4
**broad** [1] - 13:14
**brought** [1] - 5:12
**BSI** [2] - 10:16, 10:20
**burden** [1] - 8:23
**burdensome** [1] - 6:10
**Burling** [1] - 3:7
**cannot** [1] - 7:20
**carry** [1] - 12:23
**case** [5] - 9:14, 14:1, 14:3, 14:10
**cases** [9] - 9:3, 9:4, 11:7, 13:23, 13:24, 14:3, 14:8, 14:21, 14:23
**Celulose** [1] - 3:3
**certainly** [3] - 12:9, 12:20, 14:21
**CERTIFICATE** [1] - 17:1
**certify** [1] - 17:3
**cherry** [1] - 14:8
**chose** [1] - 7:10
**chosen** [1] - 6:7
**Circuit** [2] - 8:9, 8:15
**circumvent** [1] - 8:14
**citation** [1] - 12:7
**cite** [6] - 5:23, 13:24, 14:2, 14:3, 14:8, 14:10
**cited** [3] - 14:7, 14:8, 14:23
**claim** [1] - 16:9
**clay** [1] - 10:19
**clear** [3] - 8:13, 13:14, 13:18
**clearly** [1] - 14:25
**client** [5] - 7:5, 7:13, 7:15, 12:4, 12:6
**client's** [1] - 8:18
**CMPC** [8] - 3:3, 3:8, 3:12, 5:6, 5:12, 9:7, 9:9, 16:5
**CMPC's** [1] - 3:21
**commenced** [1] - 15:23
**comments** [3] - 5:1, 5:2, 9:12
**common** [1] - 13:15
**communications** [1] - 13:15
**concealed** [1] - 14:2
**concern** [1] - 16:6
**concerns** [1] - 16:7
**conduct** [1] - 10:17
**confirmed** [1] - 11:23
**conflict** [2] - 6:18, 15:19
**conflicting** [3] - 7:1, 13:7, 15:18

**considered** [1] - 8:22
**constitution** [2] - 11:2, 14:6
**Constitution** [1] - 7:25
**constitutional** [1] - 13:16
**contempt** [1] - 12:7
**control** [3] - 9:21, 10:2, 11:25
**COOK** [12] - 3:16, 3:20, 4:16, 4:25, 6:13, 7:15, 7:19, 11:15, 12:9, 12:15, 12:24, 16:18
**Cook** [5] - 3:17, 4:14, 11:13, 15:7, 15:16
**Cooper** [2] - 11:1, 11:6
**correct** [1] - 17:4
**counsel** [1] - 3:4
**couple** [5] - 4:16, 5:1, 5:22, 5:25, 6:1
**course** [1] - 8:21
**COURT** [21] - 3:1, 3:9, 3:13, 3:15, 3:19, 3:21, 4:3, 4:14, 4:24, 6:11, 7:11, 7:17, 8:21, 11:13, 12:3, 12:12, 12:23, 15:3, 16:10, 16:19, 17:1
**court** [8] - 5:16, 6:1, 6:25, 7:3, 7:21, 9:15, 15:21
**Court** [9] - 5:19, 7:8, 9:18, 10:13, 12:18, 13:9, 14:13, 14:15
**courts** [5] - 6:22, 7:7, 8:23, 9:5, 13:11
**Covington** [1] - 3:7
**CPSMC** [1] - 6:5
**criminal** [2] - 14:3, 14:23
**CRR** [1] - 17:7
**crucial** [1] - 16:8
**cumbersome** [2] - 13:5, 13:6
**custody** [3] - 9:21, 10:1, 11:25
**Dallas** [1] - 3:17
**deal** [3] - 13:11, 13:24, 14:5
**decided** [3] - 6:1, 6:21, 15:17
**decision** [3] - 6:19, 13:9, 16:9
**decisions** [1] - 12:17
**declaration** [6] - 6:15, 13:13, 13:19, 13:20, 14:4, 15:12
**declarations** [2] - 10:10, 15:8
**denied** [3] - 4:23, 4:24, 14:13
**deny** [2] - 12:8, 15:1
**depose** [1] - 14:17
**deposed** [2] - 10:20, 16:3
**deposition** [13] - 5:9, 5:20, 6:2, 6:6, 7:6, 7:20, 7:22, 7:25, 8:3, 8:22, 10:3, 14:18, 16:5
**depositions** [9] - 8:24, 9:4, 9:6, 11:3, 11:6, 11:9, 12:19, 14:14, 15:15
**determine** [3] - 5:19, 7:21, 9:1
**DIALOGUE** [1] - 12:11
**different** [3] - 6:18, 14:5
**disagree** [1] - 6:9
**discovery** [10] - 6:16, 8:7, 8:15, 9:19, 11:8, 15:11, 15:21, 16:11, 16:14
**discretion** [2] - 14:25, 15:1
**discussed** [3] - 11:22, 13:1, 13:2
**discusses** [1] - 13:3
**dispute** [1] - 10:7
**disputed** [2] - 10:10, 15:13
**distinction** [1] - 6:4
**District** [1] - 14:13

**document** [4] - 11:17, 12:1, 12:3, 12:10
**documentary** [1] - 11:4
**documents** [15] - 5:7, 5:13, 5:14, 5:17, 9:14, 9:20, 9:25, 10:1, 10:19, 12:8, 12:21, 14:15, 14:19, 16:6
**done** [1] - 10:23
**down** [1] - 6:13
**DUCLOS** [7] - 3:6, 3:10, 4:1, 4:5, 9:11, 15:5, 16:17
**Duclos** [4] - 3:7, 3:9, 3:24, 15:4
**either** [4] - 6:3, 9:21, 9:25, 11:11
**elaborate** [1] - 5:4
**employed** [1] - 10:20
**employees** [1] - 14:15
**employer** [2] - 5:8, 9:17
**engineer** [1] - 10:19
**Engineering** [1] - 11:25
**entitled** [3] - 6:15, 8:23, 17:5
**ESI** [3] - 5:8, 9:16, 9:20
**establish** [2] - 7:9, 14:18
**established** [2] - 6:23, 8:19
**estate** [2] - 14:1, 14:22
**event** [1] - 8:24
**evidence** [7] - 8:24, 9:17, 10:13, 10:14, 11:4, 15:20, 15:24
**example** [2] - 13:25, 16:4
**examples** [2] - 11:7, 13:23
**excused** [1] - 16:19
**exercise** [1] - 15:1
**expedition** [1] - 9:8
**expert** [8] - 6:14, 6:17, 10:7, 10:24, 11:5, 13:3, 14:4, 15:9
**expert's** [1] - 13:13
**extremely** [1] - 10:9
**F.2nd** [1] - 14:12
**fact** [1] - 7:22
**factors** [1] - 5:24
**failed** [1] - 9:17
**fairly** [1] - 12:16
**far** [2] - 10:12, 16:4
**Fernando** [1] - 3:18
**Fifth** [2] - 8:8, 8:15
**file** [3] - 4:9, 4:13, 4:20
**filed** [4] - 4:21, 6:17, 10:6, 10:11
**files** [3] - 9:22, 11:21, 11:23
**finally** [1] - 13:21
**firm** [2] - 3:17, 10:17
**first** [5] - 3:24, 5:10, 9:13, 10:22, 11:5
**fishing** [1] - 9:8
**Footnote** [1] - 13:2
**foregoing** [1] - 17:3
**formal** [1] - 12:6
**forward** [1] - 5:19
**fundamental** [1] - 6:24
**grant** [1] - 7:2
**granted** [3] - 4:10, 9:4, 11:8
**guess** [1] - 12:16
**handled** [1] - 5:16
**hardly** [1] - 8:22
**harm** [3] - 7:5, 8:2, 8:17
**harmed** [1] - 8:18

**hear** [1] - 10:23
**hearing** [1] - 12:13
**himself** [2] - 12:4, 12:7
**Honor** [8] - 3:6, 4:17, 6:13, 7:8, 11:16, 12:9, 16:17, 16:18
**horse** [1] - 8:7
**hung** [1] - 6:25
**hurt** [1] - 7:18
**illegal** [1] - 11:12
**Illinois** [8] - 5:12, 5:16, 6:3, 9:15, 10:12, 14:13, 16:2
**illustrate** [1] - 12:18
**impossible** [1] - 13:5
**impractical** [1] - 10:9
**improperly** [1] - 8:16
**incident** [1] - 16:8
**including** [2] - 11:9, 14:19
**inconsistent** [1] - 7:24
**indeed** [1] - 9:14
**information** [2] - 11:24, 14:19
**initial** [2] - 13:3, 13:19
**injured** [2] - 7:14, 7:17
**interestingly** [1] - 14:11
**interviewing** [1] - 10:16
**investigation** [2] - 10:18, 16:7
**invoke** [1] - 14:6
**involving** [1] - 14:2
**issue** [8] - 5:15, 6:2, 12:1, 12:12, 12:19, 14:1, 15:9, 15:16
**issues** [7] - 6:1, 13:8, 13:25, 14:5, 14:9, 15:18, 15:20
**items** [1] - 5:10
**jeopardized** [2] - 7:13, 7:15
**jeopardy** [1] - 12:7
**Johnny** [2] - 17:3, 17:7
**Judge** [5] - 3:16, 7:19, 12:15, 13:21, 14:24
**judicial** [1] - 14:12
**July** [1] - 15:24
**jurisdiction** [1] - 7:10
**justice** [1] - 8:21
**kinds** [2] - 9:6, 13:15
**lake** [1] - 15:4
**last** [1] - 4:5
**Laura** [1] - 3:11
**law** [9] - 6:16, 6:20, 6:23, 9:1, 10:25, 11:5, 13:8, 15:18, 15:20
**lawsuit** [1] - 7:10
**least** [1] - 9:5
**leave** [1] - 4:20
**led** [1] - 9:18
**left** [1] - 5:18
**less** [1] - 16:15
**letter** [5] - 6:6, 10:5, 10:23, 12:24, 15:9
**letters** [2] - 6:11, 7:12
**light** [1] - 10:8
**limit** [1] - 8:11
**Lorenzo** [12] - 3:18, 5:7, 5:20, 6:7, 9:14, 9:22, 10:6, 11:17, 11:21, 11:22, 12:21, 15:19
**Lorenzo's** [6] - 9:17, 10:1, 10:7, 10:24, 15:8, 16:7

**LOTA** [1] - 10:17
**Louisiana** [6] - 6:1, 6:3, 6:25, 9:15, 9:16, 16:1
**lower** [1] - 8:6
**major** [1] - 8:22
**March** [1] - 15:23
**matter** [4] - 5:3, 9:23, 14:25, 17:5
**McDonald's** [1] - 14:14
**mean** [3] - 4:5, 8:23, 12:5
**mechanism** [2] - 10:8, 15:10
**mechanisms** [1] - 6:22
**meeting** [1] - 5:24
**men's** [1] - 8:24
**moot** [3] - 5:11, 9:14, 12:2
**most** [1] - 13:24
**motion** [7] - 4:3, 4:6, 4:7, 4:9, 4:20, 4:23, 7:3
**move** [1] - 13:21
**moved** [1] - 4:18
**moving** [1] - 12:16
**MR** [12] - 3:16, 3:20, 4:16, 4:25, 6:13, 7:15, 7:19, 11:15, 12:9, 12:15, 12:24, 16:18
**MS** [9] - 3:6, 3:10, 3:11, 3:14, 4:1, 4:5, 9:11, 15:5, 16:17
**narrower** [1] - 12:19
**necessary** [1] - 9:6
**necessity** [1] - 14:18
**need** [2] - 12:20, 14:17
**never** [1] - 7:25
**news** [1] - 10:5
**Nicole** [2] - 3:7, 3:9
**none** [1] - 15:22
**Northern** [1] - 14:12
**note** [1] - 5:21
**number** [1] - 9:2
**obtain** [3] - 6:6, 7:20, 8:15
**obtaining** [1] - 5:13
**obviously** [3] - 4:18, 4:22, 5:22
**offer** [1] - 9:17
**offered** [3] - 11:7, 15:22, 16:5
**Ohio** [1] - 16:2
**one** [4] - 6:25, 12:5, 14:10, 14:22
**ones** [2] - 9:18, 14:9
**oppose** [1] - 4:19
**opposed** [1] - 8:13
**order** [3] - 11:18, 14:11, 16:11
**otherwise** [2] - 5:8, 8:8
**outside** [1] - 8:19
**own** [4] - 9:22, 11:21, 11:23, 13:1
**p.m** [1] - 16:20
**Page** [1] - 13:2
**papers** [3] - 3:22, 5:23, 10:6
**party** [1] - 13:16
**penalty** [1] - 12:4
**pending** [1] - 9:4
**perjury** [1] - 12:5
**petition** [1] - 14:17
**petitioner** [1] - 3:5
**phone** [1] - 3:15
**phonetic** [4] - 10:11, 10:17, 15:8, 16:2
**picked** [1] - 14:8

**Pimenta** [1] - 14:1
**place** [2] - 8:1, 10:15
**plain** [1] - 16:2
**point** [4] - 6:24, 10:10, 11:10, 13:24
**points** [3] - 5:25, 15:6, 16:12
**position** [1] - 9:1
**possession** [4] - 5:8, 9:21, 10:2, 11:25
**potentially** [1] - 8:18
**precedence** [1] - 16:13
**precedent** [1] - 8:9
**preferable** [1] - 7:13
**prejudice** [1] - 4:21
**presented** [2] - 6:3, 14:9
**PRINGLE** [2] - 3:11, 3:14
**Pringle** [1] - 3:11
**privilege** [1] - 5:15
**probate** [4] - 13:25, 14:1, 14:23
**procedure** [1] - 6:12
**procedures** [1] - 7:20
**proceeding** [5] - 8:6, 8:7, 8:11, 15:23, 16:14
**proceedings** [3] - 8:3, 11:10, 17:4
**process** [9] - 6:5, 7:9, 7:11, 7:12, 8:19, 10:5, 10:18, 12:25
**produce** [2] - 9:20, 12:10
**produced** [9] - 5:14, 5:17, 9:25, 10:19, 14:16, 15:25, 16:1
**proffered** [1] - 10:14
**protection** [1] - 13:16
**protections** [1] - 14:6
**provided** [1] - 12:13
**provisions** [1] - 14:5
**pursuant** [1] - 6:22
**put** [1] - 12:7
**puts** [1] - 15:19
**quickly** [2] - 13:22, 15:6
**raise** [2] - 12:25, 13:1
**raised** [6] - 10:6, 10:7, 10:9, 11:3, 15:11
**raises** [1] - 11:2
**rapidly** [1] - 12:17
**rather** [3] - 6:19, 9:9, 13:8
**Re** [2] - 3:3, 14:11
**read** [1] - 3:22
**really** [4] - 7:2, 12:17, 13:4, 14:9
**reason** [1] - 5:11
**reasons** [6] - 5:22, 6:14, 7:12, 7:23, 16:14, 16:15
**receiving** [1] - 14:19
**receptive** [1] - 15:21
**Recessed** [1] - 16:20
**record** [2] - 4:11, 17:4
**regarding** [2] - 11:2, 13:12
**reject** [2] - 9:18, 10:14
**relief** [1] - 15:1
**remains** [3] - 4:13, 12:1, 15:16
**rendered** [1] - 5:11
**reportedly** [1] - 16:7
**REPORTER'S** [1] - 17:1
**request** [6] - 3:21, 3:24, 9:8, 9:13, 12:6, 14:14
**requested** [2] - 10:13, 15:2

**respect** [6] - 5:21, 6:20, 9:22, 11:3, 11:4, 12:19
**respond** [1] - 4:7
**response** [6] - 4:6, 4:10, 4:19, 4:20, 4:23, 6:9
**restrictions** [1] - 8:14
**retained** [1] - 10:17
**RMR** [1] - 17:7
**rogatory** [7] - 6:6, 6:11, 7:12, 10:5, 10:23, 12:24, 15:9
**role** [1] - 16:7
**ruling** [1] - 9:16
**Sanchez** [2] - 17:3, 17:7
**scheduled** [1] - 10:20
**scope** [1] - 16:5
**second** [5] - 4:7, 4:10, 4:13, 4:20, 10:4
**Section** [3] - 7:16, 7:24, 14:14
**Sections** [1] - 11:8
**see** [1] - 9:13
**seek** [2] - 5:12, 15:10
**seeking** [4] - 9:24, 10:1, 10:2, 16:5
**self** [1] - 14:16
**self-authenticating** [1] - 14:16
**sense** [3] - 6:21, 7:8, 9:7
**separate** [1] - 5:12
**sequence** [1] - 9:12
**shown** [1] - 14:4
**side** [1] - 9:25
**sides** [1] - 16:11
**significant** [3] - 6:4, 16:14, 16:15
**similarly** [1] - 10:16
**simpler** [1] - 5:4
**SIMULTANEOUS** [1] - 12:11
**sitting** [1] - 8:22
**slow** [1] - 10:9
**sort** [5] - 6:8, 7:3, 7:7, 7:8, 8:3
**sought** [5] - 5:6, 5:7, 14:20, 15:11
**space** [1] - 16:12
**specific** [1] - 6:2
**stalking** [1] - 8:7
**States** [1] - 9:3
**strike** [3] - 4:6, 4:18, 4:23
**stuff** [1] - 12:16
**subject** [2] - 5:14, 13:16
**subjects** [1] - 12:4
**submission** [2] - 4:2, 4:6
**submit** [1] - 14:24
**submits** [1] - 15:16
**successful** [1] - 5:13
**suggested** [1] - 8:10
**suggestion** [1] - 10:4
**suggests** [2] - 9:5, 15:10
**supplement** [3] - 4:8, 4:10, 4:13
**supplemental** [2] - 4:19, 13:19
**support** [1] - 12:20
**supported** [1] - 10:24
**suppose** [1] - 12:2
**Systems** [1] - 11:25
**table** [1] - 12:13
**tailored** [1] - 9:8
**terms** [6] - 5:24, 8:17, 11:17, 12:17, 12:24, 13:23

**testimony** [2] - 7:6, 16:8
**THE** [20] - 3:1, 3:9, 3:13, 3:15, 3:19, 3:21, 4:3, 4:14, 4:24, 6:11, 7:11, 7:17, 8:21, 11:13, 12:3, 12:12, 12:23, 15:3, 16:10, 16:19
**themselves** [1] - 13:1
**theory** [1] - 8:23
**therefore** [2] - 4:12, 10:15
**they've** [7] - 4:18, 4:21, 5:6, 6:7, 8:12, 14:7, 15:2
**today** [1] - 4:4
**Tom** [1] - 3:16
**took** [1] - 10:15
**touch** [1] - 15:15
**transcript** [1] - 17:4
**transcripts** [1] - 11:9
**transpired** [1] - 10:12
**treatment** [1] - 6:8
**treaty** [1] - 10:8
**tribunal** [1] - 8:9
**true** [1] - 12:5
**try** [4] - 6:6, 9:9, 9:11, 13:21
**trying** [1] - 8:14
**turn** [1] - 11:14
**two** [3] - 5:7, 8:17, 14:14
**unconstitutional** [1] - 11:11
**under** [5] - 6:16, 6:23, 8:8, 11:8
**United** [1] - 9:3
**unlike** [1] - 5:25
**up** [1] - 6:25
**valorem** [1] - 8:11
**various** [2] - 5:24, 12:17
**Vida** [2] - 10:11, 15:8
**ways** [1] - 14:22
**welcome** [3] - 3:2, 3:13, 3:19
**whatnot** [2] - 5:15, 6:2
**wish** [1] - 3:24
**witness** [1] - 14:17
**Zelle** [1] - 3:17